UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| KRISTA L. BURNS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | 1:07-cv-817-SEB-JMS |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY DISCUSSING COMPLAINT FOR JUDICIAL REVIEW**

Krista L. Burns ("Burns") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq*.

For the reasons explained in this Entry, the Commissioner's decision must be **remanded for further proceedings.**

**I. BACKGROUND**

Burns filed applications for SSI and DIB on April 18, 2005, and on May 3, 2005, respectively, alleging an onset date of disability of March 3, 2004. Her applications were denied initially and upon reconsideration. Her request for a hearing before an Administrative Law Judge ("ALJ") was granted. A hearing was conducted on September 19, 2006. Burns was present, accompanied by her attorney. Medical and other records were introduced into evidence, and Burns and a vocational expert testified at the hearing. The ALJ issued a decision on October 18, 2006, denying benefits. On April 23, 2007, the Appeals Council denied Burns' request for review, making the ALJ's decision final, *see Luna v. Shalala,* 22 F.3d 687, 689 (7th Cir. 1994), and this action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Burns met the insured status requirements of the Act through December 31, 2009; (2) Burns had not engaged in substantial gainful activity since March 3, 2004, the alleged onset date; (3) Burns had the following severe impairments: obesity, fibromyalgia, and osteoarthritis/degenerative disc disease with pain; (4) Burns did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) Burns had the residual functional capacity ("RFC") to perform light work with occasional climbing, balancing, stooping, kneeling, crouching, and crawling, and she was further limited to simple, routine, repetitive low stress work away from the general public that did not require strict production quotas; (6) Burns was unable to perform any past relevant work; (7) Burns was born on January 28, 1958, and was 46-years old on the alleged disability onset date, which is defined as a younger individual age 45-49, she had at least a high school education and was able to communicate in English; (8) transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that Burns is "not disabled" whether or not she had transferable job skills; and (9) considering Burns' age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Burns could perform. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Burns had not been under a disability, as defined in the Act, from March 3, 2004, through the date of the ALJ's decision.

## II.  DISCUSSION

### A.  Applicable Law

To be eligible for DIB and SSI, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. §§ 416.908; 404.1508.

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005).

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his

2

past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520, 416.920. A finding of disability requires an affirmative answer at either step three or step five.

*Id.* The claimant bears the burden of proof at steps one through four, and at step five the burden shifts to the Commissioner. *Id.* at 352.

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

**B.    Analysis**

In this case, the ALJ determined that Burns had severe impairments but that she was not disabled because she could perform a significant number of light jobs. Burns argues that the ALJ's decision is not supported by substantial evidence.

Burns first asserts that the ALJ failed to adequately consider whether her impairments satisfied Listing 1.04 (disorders of the spine).

Listing 1.04 requires the following:

Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

* * *

or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.04A,C.

In this case, the ALJ recited the criteria for Listing 1.04, but merely concluded that "there is no indication that [Burns had] experienced" [those criteria]. (R. at 18). The court cannot trace the path of the ALJ's reasoning from the evidence to his conclusion at step three of the sequential process because it lacks any discussion of the evidence. For instance, the ALJ failed to explain on what basis the objective evidence, such as the March 2004 MRI showing lumbar stenosis, a disc bulge at L4-5, a herniated disc at L5, significant degenerative disease, and root impingement at L3-4, L4-5, and L5-S1, failed to satisfy portions of the listing criteria. (R. at 19). The Commissioner responds that Burns has not shown that she can satisfy the "inability to ambulate effectively" element, however, the ALJ did not discuss that element nor did he weigh the evidence relevant to that element, and it is not the court's place to make that determination in the first instance. The record contains references to limited range of motion, weakness, an antalgic gait, positive straight leg raising tests, and significant nerve root impingement. *See e.g.,* (R. at 195, 197-98, 224-26). On remand, the ALJ shall evaluate and articulate his assessment of the medical evidence in relation to whether Burns' impairments met or equaled the relevant listings, bearing in mind that "[w]hether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue." *Barnett v. Barnhart*, 381 F.3d 664, 670-71 (7th Cir. 2004).

Burns next contends that at step two of the analysis, the ALJ erred in finding that her mental impairments were not "severe" as defined in the Act. The ALJ mentioned Burns' personality disorder, major depressive disorder, and anxiety disorder, and the fact that she had been assigned a Global Assessment of Functioning ("GAF") score of 40 in August 2006, but concluded that treatment records from June until August 2006 showed the Burns was "friendly, active, and cooperative." (R. at 17). The ALJ stated that treatment records suggested that Burns' symptoms were acute and transitory, as she was dealing with recent changes in her life. (R. at 18-19). The ALJ also determined that the record did not indicate that Burns had any restrictions in activities of daily living resulting from her mental disorders. (R. at 18).

To be considered "severe," an impairment must significantly limit a claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 416.920(c), 404.1520(c). Here, in determining that Burns' mental impairments were acute and transitory, the ALJ failed to acknowledge the evidence which noted that Burns had been taking Prozac for ten years for depression, and that as of August 2006, she had gone to the emergency room four times during the past year for chest pains and left arm numbness which were diagnosed as symptoms of a panic disorder and anxiety. (R. at 336-38, 343-45). The ALJ also failed to specify any evidence supporting his assessment that daily activities were not restricted. The ALJ did not ask Burns about her daily activities during the hearing and yet Burns reported to the Social Security Administration that depression and anxiety caused symptoms such as difficulty sleeping, inability to bathe herself, inability to keep up with housework, forgetfulness, crying all the time, and shortness of breath. (R. at

105-08). Moreover, substantial evidence does not support the ALJ's finding that because Burns was found to be "friendly, active and cooperative," her mental disorders and GAF score of 40 did not suggest a severe impairment.[1]

Burns next argues that the ALJ failed to properly evaluate her credibility pursuant to Social Security Ruling ("SSR") 96-7p. At step four of the analysis, the ALJ recited his RFC finding and that "[i]n making this finding, the undersigned considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p." (R. at 18). The ALJ stated that "[a]fter considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (R. at 19). The ALJ further stated that in determining the RFC, he took into account Burns' subjective complaints and "granted her every benefit of the doubt." *Id.* The ALJ does not explain in what sense he granted Burns such purported leniency.

SSR 96-7p and 20 C.F.R. §§ 404.1529 and 416.929 identify seven examples of the types of evidence the ALJ will consider, in addition to the objective medical evidence, when assessing the credibility of an individual's statements:

(1) The individual's daily activities;
(2) The location, duration, frequency, and intensity of the individual's pain or other symptoms;
(3) Factors that precipitate and aggravate the symptoms;
(4) The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
(5) Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
(6) Any other measures the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board);
(7) Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

---

[1] A GAF score of 40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed person avoids friends, neglects family, and is unable to work). American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed.2000).

As noted above, the ALJ did not discuss Burns' daily activities. He also did not discuss the type, dosage, and side effects of medications, aside from a broad statement that Burns "experienced some improvement of her symptoms with medication and injections." (R. at 19). He did not review any factors that tended to precipitate or aggravate her symptoms, including pain. In fact, the ALJ appears to have based his credibility determination on a few isolated findings from portions of the objective record.

Although an ALJ need not specifically discuss each of the criteria in determining a claimant's credibility, the ALJ must sufficiently articulate his assessment of the evidence to enable the court to trace the path of his reasoning. It is not clear on what basis the ALJ found that although Burns' medical impairments could reasonably produce her symptoms, Burns' complaints were less than credible. "Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported . . . can the finding be reversed." *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006) (citations omitted). In this instance, the ALJ's credibility determination is not supported because the ALJ did not articulate his reasoning in making such determination. Although the court grants special deference to the credibility determination made by the ALJ and generally will not overturn it unless it is "patently wrong," in this case the ALJ did not "build an accurate and logical bridge" from the evidence to his conclusions. *See Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (ALJ's decision remanded because ALJ's reasons for his adverse credibility finding were flawed); *Zurawski v. Halter*, 245 F.3d 881, 887-88 (7th Cir.2001). Therefore, the court cannot affirm the ALJ's credibility analysis.[2] It follows that the errors at steps two through four of the sequential analysis taint the hypothetical questions posed to the vocational expert. Therefore, substantial evidence does not support the ALJ's findings at step five.

Consistent with the foregoing, the ALJ's conclusions at steps two, three, four and five are not supported by substantial evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999) (an ALJ must "sufficiently articulate his assessment of the evidence to assure us that [he] considered the important evidence . . . [and to enable] us to trace the path of [his] reasoning.") (internal

---

[2]Burns also specifically contends that although the ALJ acknowledged that Burns' fibromyalgia was a severe impairment, the ALJ did not discuss how her pain from this impairment was factored into his determination that she could work full-time.
It is true that fibromyalgia symptoms cannot be supported by objective evidence. *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996) (the symptoms of fibromyalgia are "entirely subjective."). Therefore, the inquiry must turn to "other evidence." Other evidence includes "statements or reports from you, your treating or nontreating source, and others about your medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how your impairment(s) and any related symptoms affect your ability to work." 20 C.F.R. § 404.1529(a). The agency "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 404.1529(c)(2). On remand, the ALJ will consider and articulate how the "other evidence" shows how Burns' pain affected her ability to work.

6

quotation omitted). On remand, the ALJ shall conduct further proceedings and consider the record as a whole, in addition to any additional evidence presented, and medical and vocational expert opinion, in determining Burns' eligibility for SSI and DIB.

### III.  CONCLUSION

For the reasons discussed in this Entry, the ALJ's conclusions are not supported by substantial evidence and the court is required to **remand** the case to the ALJ for further consideration. *Melkonyan v. Sullivan,* 501 U.S. 89, 98 (1991) (a court may remand the case after passing on its merits and issuing a judgment affirming, modifying, or reversing the Commissioner's decision, a "sentence four" remand).  Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 08/22/2008

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana